UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 06-CV-3461 (JFB) (ETB)

———————————

SEA TOW SERVICES INTERNATIONAL, INC.,

Plaintiff,

VERSUS

DUKE PONTIN D/B/A SPIRIT TOWING D/B/A SEA TOW FLORIDA KEYS, AND DUKE PONTIN, INDIVIDUALLY,

Defendants.

———————————

MEMORANDUM AND ORDER
January 18, 2007

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Sea Tow Services International, Inc. ("Sea Tow"), brings this trademark and contract action against defendants Duke Pontin, doing business as Spirit Towing ("Spirit") and Sea Tow Florida Keys (collectively, the "corporate defendants"), as well as Duke Pontin individually (hereinafter, "Pontin" is used to refer to Duke Pontin in his individual capacity).[1]

Defendants move to dismiss the complaint as unripe, and for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3), respectively, of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is denied.

I. BACKGROUND

A. FACTS

The following facts are taken from the complaint, documents referenced or integrated therein, and documents filed in another court.

Plaintiff Sea Tow is a New York corporation that provides emergency and non-emergency nautical services. (Compl. ¶¶ 9,

---

[1] The complaint names separately as defendants "Duke Pontin" doing business as Spirit and "Duke Pontin, individually." As an initial matter, the Court notes that the claims asserted against Duke Pontin in his capacity as an officer of the corporate defendants are, in essence, "another way of pleading an action against [the] entit[ies] of which [Pontin] is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citations omitted). Accordingly, such claims are, "in all respects other than name, to be treated as a suit against the

entity." *Id.* at 166.

15.) Sea Tow offers its services to the public through a network of franchisees and licensees. (*Id.* ¶ 12.)

Defendant Pontin owns and operates Spirit, also known as "Sea Tow Florida Keys." (*Id.* ¶¶ 10-11.) Spirit is a Florida corporation that performs marine towing and salvage operations. (*Id.* ¶ 12.)

In July 1992, Sea Tow and defendants entered into a License Agreement (the "Agreement"). (*Id.* ¶ 16.) The Agreement provided that Pontin, doing business as Spirit, had the exclusive right to use Sea Tow marks and trade dress in offering nautical services to a specific geographic area (the "Area") defined in the Agreement, as well as the right to use the name "Sea Tow Florida Keys." (*Id.*) In April 2002, Pontin renewed the Agreement in its entirety for a ten-year term. (*Id.* ¶ 20.)

On June 24, 2006, Sea Tow sent a "Notice of Termination" (the "Notice") to defendants terminating the Agreement. (*Id.* ¶ 21.) The Notice listed several grounds for termination, including various instances of conduct by Spirit that allegedly breached the terms of the Agreement. (*Id.* ¶ 22.) In addition, the Notice reminded defendants of their obligation under the Agreement to "immediately discontinue the use of . . . Sea Tow indicia including the Sea Tow marks, and trade dress" upon termination of the Agreement. (*Id.* ¶ 34.)

Subsequent to termination, Sea Tow alleges that defendants failed to comply with these and other "post-termination requirements" set forth in the Agreement. (*Id.* ¶¶ 20, 26.) Specifically, Sea Tow alleges that defendants have continued to operate a marine assistance and towing operation but have failed (1) to stop using Sea Tow marks and trade dress on defendants' vessels, vehicles, advertisements, brochures, and "other articles of commercial use," (2) to abide by restrictions against post-termination use of "Sea Tow Know How," including "trade secrets, confidential information and other information relating to the development, operation and results of [Sea Tow's] business," and (3) to make certain payments due to Sea Tow under the Agreement. (*Id.* ¶¶ 28, 34, 61.) Moreover, Sea Tow alleges that Spirit has continued to present itself as an "authorized licencee [sic] and/or franchisee of Sea Tow" by sending a cease-and-desist letter to a valid Sea Tow licensee operating in the same area that was previously Spirit's exclusive area of operation under the Agreement. (*Id.* ¶ 34.)

On July 14, 2006, Sea Tow filed the complaint in the instant action alleging that defendants' use of Sea Tow marks and trade dress subsequent to termination of the Agreement constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1115, and dilution of Sea Tow's mark in violation of the Lanham Act, 15 U.S.C. § 1125(c), and the common law. In addition, Sea Tow alleges that defendants' post-termination use of "Sea Tow Know How" and defendants' failure to make certain payments due to Sea Tow breached the Agreement.

## B. THE FLORIDA STATE COURT ACTION

In 2001, Pontin filed suit against Sea Tow in Florida state court (the "Florida Action"). The third amended complaint in the Florida Action was filed in 2005, and alleges breach of contract, fraud, conspiracy to commit fraud, deceptive and unfair trade practices, tortious interference with contractual relations, and breach of fiduciary duty claims. (Declaration of Mitchell Stein in Opposition (hereinafter "Stein Decl.") Exh. A.)[2] All of the defendants in the instant action are plaintiffs in the Florida Action; the plaintiff in the instant action is one of several named defendants in the Florida Action. (*Id.*) Pontin's claims in the Florida Action arise out of allegedly unlawful conduct by Sea Tow that *preceded* Sea Tow's termination of the Agreement in 2006. (*Id.*)

On August 26, 2006, after Sea Tow initiated the instant action in this Court, Pontin sought and obtained from the Florida court a temporary injunction against Sea Tow (the "Florida Injunction"). (Stein Decl. Exh. B) The Florida Injunction provided that the Notice sent to Pontin by Sea Tow "is hereby deemed of no force nor effect." (*Id.*) On November 28, 2006, the Florida court modified the injunction in part but did not change the section that nullified the Notice of Termination. (Supplemental Aff. of Mitchell J. Cook (hereinafter "Cook Supp. Aff.") Exh. C.)

## II. DISCUSSION

### A. RIPENESS

The claims in the instant action arise from defendants' alleged failure to abide by limitations on defendants' conduct *following* termination of the Agreement. However, defendants argue that the Florida Injunction nullified Sea Tow's termination of the Agreement and, therefore, "the bases of plaintiff's . . . claims of breach of contract and trademark infringement[] have not even

---

[2] As an initial matter, the Court takes judicial notice of documents filed in the Florida Action and orders issued by the state court in that action. In considering a motion to dismiss, "courts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see Carmellino v. Dist. 20 of the N.Y. City Dep't of Educ.*, No. 03-CV-5942 (PKC), 2004 U.S. Dist. LEXIS 5754, at *5 (S.D.N.Y. April 5, 2004). Thus, in this case, the Court takes judicial notice of the documents from the Florida Action, including the complaint, the temporary injunction, and the order modifying the temporary injunction, not for the truth of the matters asserted therein but to establish the fact of such filings or orders. *See Washington v. United States Tennis Ass'n*, 290 F. Supp. 2d 323, 326 (E.D.N.Y. 2003) ("[The court] is permitted to take judicial notice of court documents from previous actions."); *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y. 2006) (noting that, when considering a motion to dismiss under Rule 12(b), "the Court properly can take judicial notice of the filings and [an] Order in the Connecticut state court action") (citing *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.")).

occurred to date. As such, Sea Tow's claim is not ripe."[3] (Defs.' Mem. at 5.)

### 1. Legal Standard

Article III of the Constitution precludes the resolution of a legal challenge "in the absence of [a] 'direct and immediate dilemma.'" *U.S. v. Johnson*, 446 F.3d 272, 278 (2d Cir. 2006) (quoting *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir.1999)). Accordingly, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985)). In each case, it is the plaintiff's burden to show that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to justify judicial resolution." *Marchi*, 173 F.3d at 478 (quotation marks and citation omitted). Moreover, in considering ripeness, the Court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Oldcastle Precast, Inc. v. U.S. Fidelity & Guar. Co.*, 458 F. Supp. 2d 131 (S.D.N.Y. 2006) (quoting *Texas*, 523 U.S. at 296).

### 2. Application

In the instant action, the facts alleged show that the case is fit for review by this Court – that is, there is a direct and immediate controversy between the parties. Plaintiff alleges that it terminated the Agreement between the parties and, subsequently, that defendants failed to abide by certain "post-termination" obligations imposed by contract or statute. The events underlying these allegations *preceded*, at least in part, the issuance of the Florida Injunction. Thus, assuming *arguendo* that the Notice of Termination had "no force or effect" on the date that the state court entered the Florida Injunction, the Court finds that an actual controversy exists regarding defendants' conduct during the period *prior to* the entry of the Florida Injunction. The Florida Injunction did not, and could not, undo events that preceded the injunction.

Therefore, as to the contract claims, the alleged breach occurred as soon as defendants failed to abide by the post-termination provisions of the Agreement. Under New York law, which governs the Agreement, "[a] breach of contract case . . . is ripe immediately upon the [alleged] breach, even where damages remain uncertain." *Argonaut P'ship, L.P. v. Bankers Trustee Co. Ltd.*, No. 96 Civ. 2222 (MBM), 1997 WL 45521, at *5 (S.D.N.Y. Feb. 4, 1997). In addition, as to the trademark claims, the alleged infringement occurred as soon as defendants used Sea Tow marks and trade dress without permission to do so.

Moreover, the Court finds that withholding court consideration of plaintiff's

---

[3] The Court will construe defendants' ripeness objection as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, even though defendants have not referenced that Rule. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003) ("Ripeness is jurisdictional in nature and therefore properly considered on a motion to dismiss . . . pursuant to Rule 12(b)(1).") (citing *Auerbach v. Bd. of Educ.*, 136 F.3d 104, 108-09 (2d Cir.1998)).

4

claims would impose an undue hardship upon plaintiff by denying judicial resolution of a "direct and immediate dilemma." *Johnson*, 446 F.3d at 278.

## B. PERSONAL JURISDICTION

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). However, prior to discovery, "the plaintiff need only make a prima facie showing of jurisdiction through its own affidavits and supporting materials to defeat the motion." *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998) (quotation marks and citations omitted). In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor.[4] *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 85 (2d Cir. 2001).

### 1. Long-Arm Statute

Where, as here, "the underlying action is based on a federal statute, [the Court] appl[ies] state personal jurisdiction rules if the federal statue does not specifically provide for national service of process." *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) (quoting *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104-05 (1987)); *see Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) ("Because the Lanham Act does not provide for national service of process, the New York state long-arm statute governs [the personal jurisdiction] inquiry."). To establish personal jurisdiction under N.Y.C.P.L.R. § 302(a)(1) (hereinafter, "Section 302(a)(1)"), "two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 52 N.Y.2d 268, 273 (N.Y. 1981)). The statute allows jurisdiction "only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invok[ed] the benefits and protections of its laws.'" *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (quoting *Parke-Bernet Galleries v. Franklyn*, 256 N.E.2d 506, 508-09 (N.Y. 1970)). For the reasons that follow, the Court finds that the Agreement and allegations contained in the complaint make a *prima facie* showing that defendants transacted business within the state and that the claims asserted arise from defendants' business activity. Accordingly, defendants are subject to this Court's jurisdiction under Section 302(a)(1).

(a) Transaction of Business in New York

Several factors should be considered in determining whether an out-of-state defendant transacts business in New York, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has

---

[4] The Court notes that "[e]ventually personal jurisdiction must be established by a preponderance of the evidence . . . at an evidentiary hearing or at trial." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993).

5

visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward*, 362 F.3d at 22 (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). None of these factors is dispositive. "[T]he ultimate determination is based on the totality of circumstances." *Id.* at 23.

Here, the Court finds that the first, third, and fourth factors listed above strongly favor the exercise of jurisdiction over defendants pursuant to Section 302(a)(1). As to the first factor, from 1992 to June 2006, defendants maintained a continuous, ongoing contractual relationship with Sea Tow, a New York corporation. The Agreement established a licensor-licensee relationship between the parties, wherein Spirit obtained the right to use Sea Tow marks, trade dress and "Know How." (Compl. Exh. B.)

As to the third factor, the Agreement contains a New York choice-of-law provision.[5] Such a provision is a "significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law." *Sunward*, 352 F.3d at 23; *see Sacody Tech., Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1156 (S.D.N.Y. 1994) ("The Court . . . considers the choice-of-law clause a significant contact with New York for purposes of § 302(a)(1).").

As to the fourth factor, section 5(B) of the Agreement provides that "[m]embership fees received by [defendants] shall be . . . mailed to Sea Tow International at its address" in New York, and, in turn, that Sea Tow shall mail a portion of those fees from Sea Tow's headquarters in New York back to defendants in Florida. (Compl. Exh. B.) The Agreement also provides that defendants shall pay money into a "Reciprocal Towing Fund" by sending payments to Sea Tow's headquarters in New York. (*Id.*) As such, the Agreement "requires [defendants] to send . . . payments into the forum state," *Sunward*, 362 F. 3d at 22, and to periodically receive payments from the forum state. Moreover, the Agreement provides that Sea Tow shall "maintain control over the nature and quality of all services, memberships lists and records, products, advertising, promotional activities or other activities" of defendants relating to the use of Sea Tow marks and "Know How," approve any marketing materials used by defendants "prior to dissemination," and retain the right to "examine and approve the quality of services and products" offered by defendants. (Compl. Exh. B.) That is, the Agreement "subjects [defendants] to supervision by [Sea Tow,] the corporation in the forum state." *Sunward*, 362 F.3d at 22 (quotation marks omitted).

By contrast, the second factor does not favor the exercise of jurisdiction under Section 302(a)(1). Although the Agreement

---

[5] The Court will consider the Agreement in ruling on the instant motion because (1) the complaint incorporates the Agreement by reference and (2) the Agreement is attached as an exhibit to the Complaint. *See, e.g., Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994) ("[T]he complaint includes any written instrument attached to it as an exhibit and any statements or documents incorporated into it by reference.").

at issue was negotiated by plaintiff and defendants in New York and Florida, respectively, via telephone and written communication, the defendants have not visited New York since entering into the Agreement.

In sum, after carefully reviewing the totality of defendants' activities in New York, and resolving all doubts in plaintiff's favor, the Court finds that the factors discussed *supra* – including defendants' telephonic and written communications with the New York corporation, their contractual relationship with the New York corporation, the New York choice-of-law provision contained in the Agreement, payments by defendants to and reception of payments from the New York corporation, and defendants' consent under the Agreement to supervision by the New York corporation – establish that defendants transacted business in New York. *See Agency Rent a Car*, 98 F.3d at 30 ("[W]e question whether, in an age of e-mail and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence [to the jurisdictional analysis under Section 302(a)(1)].")

(b) Relationship between Defendants' Conduct in New York and the Claims Asserted

Section 302(a) also requires that the claims asserted "aris[e] from any of the acts" that provide the basis for exercising jurisdiction. N.Y.C.P.L.R. § 302(a). "[A] claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon.'" *Sole Resort*, 450 F.3d at 103 (quoting *McGowan*, 52 N.Y.2d at 272). "A connection that is 'merely coincidental' is insufficient to support jurisdiction." *Id.* (quoting *Johnson v. Ward*, 829 N.E.2d 1201, 1203, (N.Y. 2005)).

The Court finds that there is an "articulable nexus" between the trademark and breach of contract claims asserted here and the business transacted by defendants in New York. As to the trademark claims, although the alleged infringing conduct occurred in Florida, defendants had previously entered into and operated under a licensing agreement with a New York corporation, and the disputed validity of that agreement underlines plaintiff's trademark claims. *See Sunward*, 362 F.3d at 23 (finding that trademark claims "arise" out of the defendant's transaction of business in New York – entering into and operating under a dealership agreement with a New York corporation – where the "alleged trademark infringement occurred in Alabama, and only after their contract with Plaintiff expired").

As to the contract claims, the Second Circuit has rejected the notion that a claim based on an alleged breach of contract that occurs outside of New York cannot be said to 'arise out of' transactions in the forum." *Agency Rent a Car*, 98 F.3d at 31; *see Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985) ("Just as it is unnecessary for the acts constituting the breach of contract to take place in New York in order for a New York court to sustain personal jurisdiction, it is unnecessary that final negotiations or . . . execution of the contract take place in New York."). Instead, a "breach of contract claim arises from facts related to the formation, performance, or breach of a contract." *Barrett v. Tema Dev. (1988)*, – F. Supp. 2d – , No. 06 Civ. 0144 (VM), 2006 WL 3345411, at *6 (S.D.N.Y. Nov. 15, 2006) (quoting *Agency Rent a Car*, 98 F.3d at 31). In this case, as discussed *supra*, the contract at issue was

7

negotiated, in part, through telephone and written communications made to New York; it required defendants to perform in New York by mailing payments to and receiving payments from Sea Tow's headquarters in New York; and, due to the Agreement's New York choice-of-law provision, any dispute regarding breach of the Agreement would be governed by New York contract law. The contract claims arise from these transactions. *See Hoffritz*, 763 F.2d at 59 (finding that, although the alleged breaching conduct occurred in Georgia, the contract claims "ar[ose] directly from alleged breaches of the *franchise agreement*" that was negotiated and executed in part in New York and thus arose from business transacted in New York). As such, the Court finds that the connection between plaintiff's contract claims and defendants' transaction of business in New York in forming the Agreement, performing under the Agreement, and availing themselves of New York law is sufficient to support jurisdiction over defendants under Section 302(a)(1).

(c) Long-Arm Jurisdiction over Pontin

Jurisdiction over individual defendants employed by a non-domiciliary corporation is appropriate under Section 302(a)(1) where "the out-of-state corporate officers were primary actors in the transactions in New York that gave rise to the litigation, and not merely some corporate employee[s] who . . . played no part in it." *Bradley v. Staubach*, No. 03 Civ. 4160 (SAS), 2004 WL 830066, at *4 (S.D.N.Y. Apr. 13, 2004) (quoting *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998)) (internal quotation marks and citations omitted). In this case, it is undisputed that Pontin, the individual defendant, "operated and/or managed" the corporate defendants, negotiated, signed, and renewed the Agreement on behalf of the corporate defendants. (Compl. ¶¶ 10-12, 20, 23; Compl. Exh. B.) Accordingly, the Court finds that Pontin was a "primary actor" in the transactions that gave rise to the instant litigation and, therefore, is also subject to this Court's jurisdiction under Section 302(a)(1).

2. Due Process

The "exercise of long arm jurisdiction . . . by a New York court must also satisfy constitutional due process standards." *Sunward*, 362 F.3d at 24. "The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Met. Life Ins. Co. v. Roberston-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Here, plaintiff has made a *prima facie* showing that due process is satisfied because (1) plaintiff's claims "aris[e] out of or relate[] to the defendant[s'] contacts with the forum," *Met. Life Ins. Co.*, 84 F.3d at 567-68, and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice" – that is, it is reasonable under the circumstances of this particular case. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Met. Life Ins. Co.*, 84 F.3d at 568.

First, the Court finds that plaintiff's claims arise out of defendants' contacts with New York and thus justify the Court's exercise of "specific" jurisdiction. *Met. Life Ins. Co.*, 84 F.3d at 567. Specifically, as discussed *supra*, the instant suit arises out of defendants' activities in New York, including (1) entering into the Agreement that established a continuous contractual relationship with the New York corporation and subjected defendants to its supervision, (2) mailing payments to and receiving payments from the New York corporation's headquarters, and (3)

consenting, through the New York choice-of-law provision in the Agreement, to be governed by New York law.

Second, the Court finds that the exercise of jurisdiction over defendants is "reasonable" under the test set forth in *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Calif., Solano Cty.*, 480 U.S. 102, 113 (1987). Under *Asahi*, the Court must consider five factors in assessing reasonableness:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Met. Life*, 84 F.3d at 568 (citing *Asahi*, 480 U.S. at 113-14). The burden is upon defendants to demonstrate circumstances that "would render jurisdiction unreasonable." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, (2d Cir. 2002) (quotations and citation omitted). Here, viewing the evidence in the light most favorable to plaintiff, defendants have failed to show that this case is "the 'exceptional situation' where exercise of jurisdiction is unreasonable even though minimum contacts are present." *Id.* at 130 (citation omitted).

As to the first factor, defendants assert that the exercise of jurisdiction by this Court would impose an "extreme" burden on Pontin and the corporate defendants in the form of increased travel and litigation costs, and time away from defendants' base in Florida. (Defs.' Mem. at 18-19.) However, "[e]ven if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because 'the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.'" *Bank Brussels*, 305 F.3d at 129-30 (quoting *Met Life*, 84 F.3d at 574).

As to the second factor, New York, as the home of Sea Tow, has "an unquestionable interest" in adjudicating the claims asserted here. *Id.* at 130. The third and fourth factors both "implicate the ease of access to evidence and the convenience of witnesses." *Id.* Here, defendants argue that all of "the equipment, customers, records and activities" related to plaintiff's claims are located in Florida and, therefore, it would be more efficient to litigate the case in that state. However, as to the third factor, the Court finds that plaintiff has a "strong interest" in litigating this action in New York, where plaintiff "is incorporated and has its principal place of business." *Boehner v. Heise*, 410 F. Supp. 2d 228, 239 (S.D.N.Y. 2006); *see also Bradley*, 2004 WL 830066, at \*6 ("[B]ecause [plaintiff] is a New York resident, he has a strong interest in litigating this action in New York."). As to the fourth factor, it is likely that evidence and witnesses in this case will be located both in New York and in Florida. Accordingly, the Court finds that this factor does not help to establish that the exercise of jurisdiction over defendants would be unreasonable.

Finally, the shared interest of the states in furthering substantive social policies "is not a major issue here." *In re Parmalat Securities Litig.*, 381 F. Supp. 2d 283, 291 (S.D.N.Y. 2005). The Court finds that defendants fail to offer a persuasive social policy that would

9

counsel against exercising jurisdiction in this case. The sole policy presented by defendants – "preventing a wealthy party from steamrollering a defendant by making . . . litigation too expensive" – is unsupported by prior case law and provides an insufficient basis to find that adjudicating this case in New York would be unreasonable. (Defs.' Mem. at 21-22.)

In sum, defendants fail to show that the exercise of jurisdiction in New York would be unreasonable. The second, third, fourth and fifth factors all either favor jurisdiction in New York or are neutral as to the reasonableness inquiry. The first factor does not so heavily counsel against the exercise of jurisdiction as to make this the "exceptional situation" where defendants with minimum contacts in the forum state would not be subject to jurisdiction in that state. Accordingly, the Court finds that plaintiff has made a *prima facie* showing that the exercise of personal jurisdiction over defendants would not offend the requirements of due process.

## C. VENUE

"When venue is challenged by a defendant, plaintiff bears the burden of proving that venue is proper in the forum state" for *each* claim against each defendant. *Jaguar Cars, Ltd. v. Nat'l Football League*, 886 F. Supp. 335, 338 (S.D.N.Y. 1995); *PI, Inc. v. Quality Products, Inc.*, 907 F. Supp. 752, 757 (S.D.N.Y. 1995). Defendants argue that the instant case should be dismissed, pursuant to 28 U.S.C. § 1391(b) ("Section 1391(b)"), for improper venue, or, in the alternative, transferred, pursuant to 28 U.S.C. § 1406 ("Section 1406"), to the Southern District of Florida. For the following reasons, the Court finds that plaintiff has shown that venue for this action is proper in the Eastern District of New York.

### 1. Legal Standard

Section 1391(b) provides, in relevant part, that:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

It is undisputed that the "substantial part" provision of Section 1391(b)(2) directs the venue inquiry in this case.[6] (Defs.' Mem. at

---

[6] The Court notes that Section 1391(c) does not provide for venue over this action in the Eastern District of New York. Section 1391(c) provides, in relevant part, that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *see "Broadcast Mktg. Int'l, Ltd. v. Prosource Sales & Mktg.*, 345 F. Supp. 2d 1053, 1064 (D. Conn. 2004) ((quoting *Divicino v. Polaris Indus.*, 129 F. Supp. 2d 425, 435 (D. Conn. 2001)). In this case, based upon the personal jurisdiction discussion *supra*, the corporate defendants can be said to "reside" in New York for the purposes of Section 1391(c). However, pursuant to Section 1391(b)(1), a "civil action" may be brought in a district where one defendant "reside[s]" only where *all* of the defendants reside in the forum State. In this case,

22-23.) Courts conduct a two-part inquiry to determine whether venue is appropriate under Section 1391(b)(2). First, the Court must "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). Second, the Court determines whether "a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to [those] claim[s] . . . have occurred in the district in question.'" *Id.* (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir.2005)). As to the second part of this inquiry, the Court notes that "'[s]ubstantiality' for venue purposes is more a qualitative than a quantitative inquiry." *Daniel*, 428 F.3d at 432-33. As such, "[w]hen material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* at 433.

Finally, the Court notes that venue is appropriate in "*each* district where a substantial part of the events . . . occurred," and thus venue may be appropriate in this district even if a greater portion of events occurred elsewhere. *Concesionaria DHM, S.A. v. Int'l Finance Corp.*, 307 F. Supp. 2d 553, 559 (S.D.N.Y. 2004).

### 2. Application

#### (a) Contract Claims

"In determining whether venue is proper for a breach of contract action . . . courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *PI, Inc.*, 907 F. Supp. at 758. In this case, the Court finds that these factors demonstrate that the acts underlying the contract claims bear a "close nexus" to defendants' activities in this District, and thus venue is proper here. *Daniel*, 428 F.3d at 433.

First, it is undisputed that negotiations regarding the Agreement were performed via telephone and written communication by Pontin and Sea Tow in Florida and in the Eastern District of New York, respectively. As such, the Court finds that the Agreement was negotiated, at least in part, in New York. *See, e.g., Largotta v. Banner Promotions, Inc.*, 356 F. Supp. 2d 388, 391 (S.D.N.Y. 2005) ("[T]he fact that [defendant] was elsewhere during [contract negotiation] conversations simply means that venue would also be proper in other locations, not that it is improper in New York."); *Sacody Tech., Inc. v. Avant, Inc.*, 862 F. Supp. 1152, at 1157 (S.D.N.Y. 1994) (finding venue appropriate in New York where "at least some of defendants' dealings with [plaintiff regarding the contract at issue] took place over the phone and by correspondence and facsimile between [defendants] and [plaintiff] in Massachusetts and New York, respectively") (quotation marks omitted); *Schomann Int'l Corp. v. N. Wireless, Ltd.*, 35 F. Supp. 2d 205, 213 (N.D.N.Y.1999) (finding that an agreement was "negotiated and executed in both New

---

it is undisputed that Pontin resides in Florida, not New York. Therefore, the Court finds that venue in this district is improper under Section 1391(b)(1) because "all" of the defendants do not reside in the forum state. *See, e.g., Dimensional Media Assoc., Inc. v. Optical Products Dev. Corp.*, 42 F. Supp. 2d 312, 316 (S.D.N.Y. 1999) ("Section 1391(c) does not apply to individual defendants."); *Schomann Int'l Corp. v. N. Wireless, Ltd.*, 35 F. Supp. 2d 205, 212 (N.D.N.Y.1999).

York and Iowa" where "the parties negotiated and executed [its] terms . . . through telephone conversations and correspondence between their respective New York and Iowa offices").

Second, the Agreement required that defendants mail payments to New York, and thus mandated performance by defendants, in part, in New York. *See Concesionaria*, 307 F. Supp. 2d at 561 ("It was the activities of the defendants in . . . failing to make payments into [plaintiff's New York bank] accounts, together with the other activities in negotiating the agreements, that have drawn them into this District."); *TBV Holdings Ltd. v. Schey*, No. 02 Civ. 1122 (BSJ), 2002 WL 1733649, at *1 (S.D.N.Y. July 26, 2002) (finding venue proper in New York where the contract at issue was "performed in part by Plaintiffs with a payment wired from New York to Florida").

Finally, a portion of the alleged breaching conduct – defendants' failure to mail payments due under the Agreement to Sea Tow headquarters in New York – occurred in New York. *See Concesionaria*, 307 F. Supp. 2d at 560 (finding venue appropriate in New York where "New York City was clearly the contractually designated place where performance by the defendants was due" and the loan agreement at issue "expressly directed payments from and disbursements to [the defendant] to be made [by plaintiff] in New York City bank accounts"); *Saltzman v. La. Auction Exch., Inc.*, 997 F. Supp. 537, 541 (S.D.N.Y. 1998) (finding venue appropriate in New York where "payment under the terms of [the parties'] agreement was due to plaintiff in New York"); *cf. Zumft v. Doney Slate Co.*, 698 F.Supp. 444, 446 (E.D.N.Y. 1988) (finding that the "fact that . . . payments were made" to New York under a contract did not, by itself, provide for proper venue in New York). Accordingly, because a number of critical events giving rise to the contract claims occurred in New York, the Court finds that plaintiff has made a *prima facie* showing that venue for the contract claims is proper in this district.[7]

(b) Trademark Infringement Claims

Drawing all reasonable inferences in favor of plaintiff, and applying the Second Circuit's most recent formulation of the standard for venue under Section 1391(b)(2), the Court also finds that the trademark claims asserted here bear a close nexus to defendants' activities in forming and operating under the Agreement in New York.[8]

---

[7] The Court notes that its holding as to venue differs from the conclusion reached by the court in another action brought by Sea Tow in this District. In *Sea Tow v. Treasure Coast*, the court considered a trademark and contract action brought by Sea Tow against a former licensee and found that venue for the action was improper in this District. *See* Memorandum and Order dated June 28, 2006, No. 05 Civ. 5129 (E.D.N.Y.) (Seybert, J.). In so ruling, the court specifically noted, in contrast to the instant action, that the ex-licensee's "performance [had] occurred *exclusively* in Florida." *Id.* at 13 (emphasis added). Here, as discussed *supra*, defendants made payments to and received payments from Sea Tow in New York pursuant to the Agreement.

[8] Under the circumstances of this case, the Court declines to follow the venue rule applied to more commonplace claims of trademark infringement by a non-licensee third-party. That rule provides that venue is appropriate only where the "infringing labels are affixed to the goods and where confusion of purchasers is likely to occur." *Make Up For Ever, S.A. v. SOHO Forever, LLC*, 198 F.R.D. 56, 61 (S.D.N.Y. 2000); *see, e.g., French Transit, Ltd. v. Modern Coupon Sys., Inc.*, 858 F. Supp. 22, 25 (S.D.N.Y.1994). By contrast, the instant action concerns infringement claims asserted against a former licensee and, therefore, involves not just the infringing conduct itself, but also the underlying contractual relationship

The Court reaches this conclusion by applying the framework adopted by the Second Circuit in *Daniel*, 428 F.3d 408. First, as to the "nature of the claims," plaintiff alleges that, at one time, defendants had license to use Sea Tow marks and trade dress but, subsequent to plaintiff's termination of the Agreement, defendants impermissibly continued to use plaintiff's marks and trade dress. As such, the acts giving rise to the trademark claims include, *inter alia*, the formation of the Agreement granting defendants license to use Sea Tow marks and trade dress, the issuance of the Notice of Termination by Sea Tow that terminated defendants' license, the conduct of defendants that bears upon the contested validity of that Notice, and the receipt by defendants of correspondence from plaintiff's headquarters in New York regarding termination of the Agreement and requesting that defendants cease to use Sea Tow marks and trade dress.

Second, as to "substantiality," the Court finds that the events described above occurred in the Eastern District of New York and comprise a substantial part of the events giving rise to the trademark claims asserted here. *Cf. Sunward*, 362 F.3d at 23-24 (finding, for purposes of New York's long-arm statute, that a "substantial relationship" existed between the defendants' activities in New York in entering into and operating under a dealership agreement and the plaintiff's trademark claims even where all of the alleged infringing conduct by defendants occurred in Alabama). As such, plaintiff has established that venue for the trademark claims against each of the defendants is proper in the Eastern District of New York.[9]

---

between the parties and the termination of that relationship. As such, for the reasons discussed *infra*, the Court finds that venue for this action is appropriate in this District under the less formalistic "close nexus" standard adopted by the Second Circuit in *Daniel*.

---

[9] Moreover, even assuming *arguendo* that venue for the trademark claims is improper in this district, the Court would exercise pendent venue over the claims. *See, e.g., Hsin Ten Enterp. USA, Inc. v. Clark Enterp.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000). Under the doctrine of pendent venue, "a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative facts as a properly venued federal claim," following the court's consideration of such factors as judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants. *Id.* at 462 (quoting *Banfield v. UHS Home Attendants, Inc.*, No. 96 Civ. 4850 (JFK), 1997 WL 342422, at *2 (S.D.N.Y. June 23, 1997). The key consideration is whether the "principal cause[s] of action" and the other causes of action originate from a common nucleus of operative facts, because that test, "in itself, embodies factors that bear upon judicial economy, convenience, and fairness." *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp. 2d 86, 98 (D.D.C. 2003) (quoting *Beattie v. United States*, 756 F.2d 91, 103 (D.C. Cir. 1984), overruled on other grounds, *Smith v. United States*, 507 U.S. 197 (1993)); *see* Wright & Miller, 14D Prac. & Proc. Juris. 3d § 3808 (2006) ("[M]any courts follow the rule that if venue is proper for the 'principal' or 'primary' claim, then venue is proper for any subsidiary claim that shares a common nucleus of operative fact with the primary claim."). In this case, the contract claims are the "principal" causes of action – they concern the formation and alleged breach of the Agreement that gives rise to all of plaintiff's claims. The trademark claims arise from the same "common nucleus of operative facts" as the contract claims: both sets of claims concern the parties' formation and termination of the Agreement, as well as defendants' post-termination conduct, including their use of Sea Tow marks and trade dress. Moreover, the exercise of pendent venue would avoid piecemeal litigation and would not impose an unfair burden on defendants, as they would already be litigating

In sum, drawing all reasonable inferences in favor of plaintiff, the Court finds that New York may be considered a substantial situs for all of the plaintiff's claims under Section 1391(b)(2).[10]

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied in its entirety. The parties shall proceed with discovery forthwith, in accordance with the individual rules of Magistrate Judge E. Thomas Boyle.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 18, 2007
Central Islip, NY

\* \* \*

The attorney for plaintiff is Mitchell A. Stein, Esq., of Stein Law, P.C., 24 Woodbine Avenue, Suite 4, Northport, New York 11768. The attorneys for defendants are Michael S. Weinstein and Peter M. Jaensch, Esqs., of Robertson Freilich Bruno and Cohen, One Riverfront Plaza, Newark, New Jersey 07102.

---

the properly venued contract claims in this District.

[10] The Court notes that defendants have not moved to transfer the instant action pursuant to 28 U.S.C. § 1404(a). As such, the Court has not analyzed the issue of transfer under that statute.