# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 06-CV-3461 (JFB) (ETB)

———————————

## SEA TOW SERVICES INTERNATIONAL, INC.,

Plaintiff,

VERSUS

## DUKE PONTIN, D/B/A SPIRIT TOWING D/B/A SEA TOW FLORIDA KEYS, AND DUKE PONTIN, INDIVIDUALLY,

Defendants.

———————————

MEMORANDUM AND ORDER
April 17, 2007

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Sea Tow Services International, Inc., ("Sea Tow") brings this trademark and breach of contract action against defendants Duke Pontin, doing business as Spirit Towing and Sea Tow Florida Keys, as well as Duke Pontin individually (collectively, "Pontin" or "defendants"). Specifically, Sea Tow alleges that defendants' use of Sea Tow marks and trade dress subsequent to the termination of its licensing agreement with defendants constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1115, and dilution of Sea Tow's mark in violation of the Lanham Act, 15 U.S.C. § 1125(c), and the common law. In addition, Sea Tow alleges that defendants' post-termination use of "Sea Tow Know How" and defendants' failure to make certain payments due to Sea Tow breached the licensing agreement.

On January 18, 2007, this Court denied defendants' motion to dismiss the complaint as unripe, and for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3), respectively, of the Federal Rules of Civil Procedure. *See Sea Tow Servs. Intern., Inc. v. Pontin*, No. 06 Civ. 3461 (JFB), 2007 U.S. Dist. LEXIS 3630, (E.D.N.Y. Jan. 18, 2007). Defendants now move to stay the instant action pending the resolution of a related case in Florida state court, pursuant to the abstention doctrine enunciated in *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976). For the reasons that follow, defendants' motion is denied.

## I. Background

### A. The Instant Action

The Court assumes the parties' familiarity with the underlying facts and procedural history of this case. Briefly, however, this action arises from defendants' alleged failure to comply with various "post-termination requirements" set forth in a License Agreement (the "Agreement") between the parties. (Compl. ¶¶ 16, 20, 26.) According to the Complaint, on June 24, 2006, Sea Tow sent a "Notice of Termination" (the "Notice") to defendants terminating the Agreement. (*Id.* ¶ 21.) The Notice listed several grounds for termination, including various instances of conduct by defendants that allegedly breached the terms of the Agreement. (*Id.* ¶ 22.)

Sea Tow alleges that, following mailing of the Notice, defendants have failed (1) to stop using Sea Tow marks and trade dress on defendants' vessels, vehicles, advertisements, brochures, and "other articles of commercial use," (2) to abide by restrictions against post-termination use of "Sea Tow Know How" – including "trade secrets, confidential information and other information relating to the development, operation and results of [Sea Tow's] business" – and (3) to make certain payments due to Sea Tow under the Agreement. (*Id.* ¶¶ 28, 34, 61.) Moreover, Sea Tow alleges that defendants have continued to present their business as an "authorized licencee and/or franchisee of Sea Tow" by sending a cease-and-desist letter to a valid Sea Tow licensee operating in the same area that was previously within defendants' exclusive area of operation under the Agreement. (*Id.* ¶ 34.)

### B. The Florida Action

In September 2001, five years before Sea Tow issued the Notice, Pontin filed suit against Sea Tow and several other defendants in Florida state court (the "Florida Action").[1] In November 2005, Pontin filed his third amended complaint in the Florida Action, alleging breach of contract, fraud, conspiracy to commit fraud, deceptive and unfair trade practices, tortious interference with contractual relations, and breach of fiduciary duty claims. (Jaensch Decl. Ex. 6.)[2] All of the defendants in the instant action are plaintiffs in the Florida Action; the plaintiff in the instant action is one of several named defendants in the Florida Action. (*Id.*)

On August 26, 2006, after Sea Tow initiated the instant action, Pontin sought and

---

[1] At oral argument on the instant motion, the parties represented to the Court that several of the state defendants had been dismissed from the Florida Action.

[2] As an initial matter, the Court takes judicial notice of documents filed in the Florida Action and orders issued by the state court in that action, not for the truth of the matters asserted therein but to establish the fact of such filings or orders. *See Washington v. United States Tennis Ass'n*, 290 F. Supp. 2d 323, 326 (E.D.N.Y. 2003) ("[The court] is permitted to take judicial notice of court documents from previous actions."); *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y. 2006) (noting that "the Court properly can take judicial notice of the filings and [an] Order in the Connecticut state court action") (citing *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.")).

obtained from the Florida court a temporary injunction against Sea Tow (the "Florida Injunction"). (Jaensch Decl. Exh. K.) The Florida Injunction provided that the Notice sent to Pontin by Sea Tow "is hereby deemed of no force nor effect." (*Id.*) On November 28, 2006, the Florida court modified the injunction in part but did not change the section that nullified the effect of the Notice of Termination.[3] (Jaensch Decl. Exh. L.)

Pontin filed the instant motion to stay the proceedings in this Court on January 29, 2007. Almost one month later, on February 23, 2007, Pontin requested leave to file a "Supplement and Amendment to Third Amended Complaint" in the Florida Action (the "Supplement"). (Jaensch Cert. Ex. B.) On March 27, 2007, the Florida court granted Pontin's request to file the Supplement.[4] Notably, the Supplement alleges claims *solely* against Sea Tow relating to its attempted termination of the Agreement in June 2006, and not against any of the other defendants in the Florida Action, (*See* Supplement, ¶¶ 33-40.)

## II. DISCUSSION

Defendants argue that the Court should abstain from exercising jurisdiction over this case in deference to the Florida Action. For the reasons that follow, this Court finds that defendants have failed to demonstrate that "exceptional circumstances" exist to justify

abstention. *See Moses H. Cone Mem'l hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983).

In considering whether to defer to parallel proceedings in state court, the starting point for federal district courts is the "virtually unflagging obligation . . . to exercise the jurisdiction given them." 424 U.S. at 817; *see Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 93 (2d Cir.2006). Thus, this Court's aim is not to find some reason for the exercise of federal jurisdiction, but rather to determine whether "exceptional circumstances" or the "clearest of justifications" exist to justify the surrender of that jurisdiction. *Moses H. Cone*, 460 U.S. at 25-26; *see Colorado River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule."); *Gregory v. Daly*, 243 F.3d 687, 702 (2d Cir. 2001) ("[T]he mere fact that parallel proceedings are pending in state court is insufficient to justify abdicating the virtually unflagging obligation to exercise federal jurisdiction.") (quotation marks and citations omitted); *see also Amer. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988) ("[T]he existence of concurrent federal and state proceedings regarding the same subject matter is not by itself sufficient to justify dismissal under *Colorado River*."); *Congress Talcott Corp. v. Roslin*, No. 95 Civ. 7698 (LAP), 1996 U.S. Dist. LEXIS 12827, at *12 (S.D.N.Y. Sept. 4, 1996) ("*Colorado River* dismissal is essentially a balancing test, with [a] heavy thumb on the retaining-federal-jurisdiction side of the scale.") .

As an initial matter, "a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Dittmer v. Cty. of Suffolk*,

---

[3] Sea Tow's appeal of the Florida Injunction is currently pending in Florida state court.

[4] Pontin provided this Court with a transcript of the state court proceeding wherein the court granted Pontin's request. Counsel for Sea Tow, who participated in that proceeding via telephone, did not dispute the accuracy of the transcript presented to the Court.

146 F.3d 113, 117-18 (2d Cir. 1998). "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir.1997); *see also Estee Lauder Co. Inc. v. Batra*, 430 F. Supp. 2d 158, 167 n.1 (S.D.N.Y. 2006); *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 258 (S.D.N.Y. 2006); *Great South Bay Med. Care, P.C. v. Allstate Ins. Co.*, 204 F. Supp. 2d 492, 496 (E.D.N.Y.2002) ("Lawsuits are considered parallel if substantially the same parties are contemporaneously litigating substantially the same issues in different forums.") (internal quotation marks and citations omitted).

Here, prior to the March 27, 2007 Supplement filed in the Florida Action, the actions were not parallel. That is, while there was an identity of parties in the two suits, the subject matter of the two suits was different. The instant action concerns the lawfulness of defendants' conduct following Sea Tow's termination of the Agreement in June 2006, including Pontin's allegedly impermissible use of Sea Tow marks and trade dress and Pontin's alleged breach of certain provisions of the Agreement governing post-termination conduct. By contrast, prior to the Supplement, the Florida Action concerned the lawfulness of Sea Tow's conduct, as well as the conduct of the other state defendants, preceding November 2005, when Pontin filed the third amended complaint in that action. As such, the suits focused on different time periods, and the outcome of each suit depended on different facts – that is, the Florida Action concerned the state defendants' breach of specific provisions of the Agreement before November 2005, and

the instant action concerned Pontin's breach of entirely different provisions of the Agreement and his use of Sea Tow marks after June 2006.

However, the Court finds that, because Pontin filed the Supplement on March 27, 2007, these actions are now, at least in part, parallel. The validity of Sea Tow's attempted termination of the Agreement in June 2006 is now an important issue in both actions – in the instant action, Sea Tow's trademark and contract claims arise directly from the termination and, in the Florida Action, the Supplement now alleges deceptive and unfair trade practices and contract claims arising from the termination as well.

Nevertheless, although the actions are parallel, the Court finds that *Colorado River* abstention is inappropriate in this case. *See Abercrombie*, 438 F. Supp. 2d at 259. Courts must weigh six factors in deciding whether to abstain under *Colorado River* and its progeny: (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *See, e.g., Village of Westfield, N.Y. v. Welch's*, 170 F.3d 116, 120-21 (2d Cir. 1999) (citing *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir.1996)). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Moses H. Cone*, 460 U.S. at 15-16. However, "the balance [is] heavily weighted in favor of the exercise of

jurisdiction," *id.* at 16, and, as such, "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it," *Woodford v. Comty. Action Agency*, 239 F.3d 517, 522 (2d Cir. 2001); *see In re Comverse Tech., Inc. Deriv. Litig.*, No. 06 Civ. 1849 (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006). For the reasons set forth below, in consideration of the *Colorado River* factors, the Court finds that defendants have failed to demonstrate that this Court should surrender its obligation to exercise jurisdiction in this case.[5]

1. Assumption of Jurisdiction Over a Res or Property

There is no res or property involved in either the instant action or the Florida Action. *See Sulton v. Ashley*, No. 01 Civ. 8179 (JSM), 2002 WL 122919, at * (S.D.N.Y. Jan. 29, 2002) (finding, in a federal trademark action, that "[t]he first factor is not operative here"). Thus, this factor is neutral and "point[s] toward exercise of federal jurisdiction." *See Woodford*, 239 F.3d at 522-23 (quoting *Village of Westfield*, 170 F.3d at 122).

2. Inconvenience of the Federal Forum

The Court finds that the federal forum is not less convenient than the state court in

Florida. Defendants reside and have their principal place of business in Florida. Sea Tow is incorporated and has its principal place of business in New York. Moreover, as this Court noted in its previous decision in this case, it is likely that evidence and witnesses in this case will be located in both New York and Florida. *See Sea Tow Servs. Int'l, Inc.*, 2007 U.S. Dist. LEXIS 3630, at *23. Accordingly, because the convenience of the federal forum is in "equipoise," this factor weighs against abstention. *See Bradley v. Kelly*, – F. Supp. 2d – , No. 06 Civ. 1408 (JBA), 2007 WL 853314, at *3 (D. Conn. March 21, 2007) (citing *Village of Westfield*, 170 F.3d at 122); *see also Neuman v. Harmon*, 965 F. Supp. 503, 510 (S.D.N.Y. 1997) (finding that the "federal forum in New York is not less convenient than the state court in South Carolina" where the party seeking abstention resided in South Carolina and the party asserting federal jurisdiction resided in New York).

The Court rejects defendants' argument that, although Pontin is located in Florida and Sea Tow in New York, the federal forum factor is relatively less convenient for Pontin because Pontin is small-business owner and Sea Tow is a corporation. (Pl.'s Reply Mem. at 6.) The case law does not support defendants' argument. *See, e.g., Estee Lauder Co. Inc. v. Batra*, 430 F. Supp. 2d 158, 167 (finding convenience factor to be neutral where individual employee resided in California and his employer had its headquarters and principal place of business in New York); *Neuman*, 965 F. Supp. at 510. Furthermore, even assuming *arguendo* that there is some disparity in the resources available to the parties to this action, defendants have failed to persuade this Court that the disparity is so great as to favor abstention.

---

[5] Initially, the Court notes that, although Pontin seeks a stay pursuant to the doctrine enunciated in *Colorado River*, rather than dismissal, "the Supreme Court has cautioned that 'a stay is as much a refusal to exercise federal jurisdiction as a dismissal,' because the decision to grant a stay 'necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case.'" *Royal & Sun Alliance Ins. Co. of Can.*, 466 F.3d at 96 (quoting *Moses H. Cone*, 460 U.S. at 28).

### 3. Avoidance of Piecemeal Litigation

The "primary context" in which federal courts abstain in order to avoid piecemeal litigation "has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of *res judicata* and collateral estoppel." *Woodford*, 239 F.3d at 524; *see, e.g., Gen. Star Int'l Indem., Ltd. v. Chase Manhattan Bank*, Nos. 01 Civ. 11370/11380, 01 Civ. 11520/11521 (AGS), 2002 U.S. Dist. LEXIS 7980, at *27 (S.D.N.Y. May 3, 2002). Here, Pontin argues that allowing both suits to proceed presents a risk of inconsistent outcomes.

The Court finds that Pontin has failed to make a persuasive argument that these suits present a risk of inconsistent outcomes not preventable by principles of *res judicata* and/or collateral estoppel. As noted above, prior to the filing of the Supplement, the third amended complaint in the Florida Action asserted claims arising solely from the state defendants' conduct prior to November 2005. By contrast, in the instant action, Sea Tow seeks relief based on Pontin's conduct following the termination in June 2006. Thus, as to those claims asserted in the original third amended complaint, the Court finds that there is no risk of inconsistent outcomes. In other words, a finding by the Florida court that Pontin is entitled to damages against the state defendants for their conduct prior to November 2005 will not be inconsistent with a finding by this Court that Sea Tow is entitled to damages arising from Pontin's conduct following the termination in 2006.

Furthermore, as to the additional claims asserted in the Supplement, the actions do not present a risk of inconsistent outcomes not preventable by principles of *res judicata*

and/or collateral estoppel.[6] Again, in the instant action, Sea Tow seeks relief based on Pontin's conduct following Sea Tow's attempted termination of the Agreement in June 2006. Similarly, in the claims set forth in the Supplement in the Florida Action, Pontin seeks relief based on Sea Tow's attempted termination of the Agreement in June 2006. Thus, if this case is allowed to proceed, the validity of Sea Tow's attempted termination of the Agreement in June 2006 would be litigated contemporaneously in both actions.

However, "the bare fact that allowing this case to proceed will result in the maintenance of duplicative proceedings" is insufficient to justify abstention under *Colorado River*. *Gregory*, 243 F.3d at 702. Here, the single issue that would be contemporaneously litigated in both actions is the validity of the attempted termination of the Agreement in June 2006. However, that issue would be litigated in both actions solely between Pontin

---

[6] The Court notes that, when the instant motion was filed on January 29, 2007, the validity of the termination was not the subject of any specific claim in a complaint filed in the Florida Action (although it was the subject of an injunction). The Court also notes that, *prior* to the filing of the instant motion, Pontin had ample opportunity to amend its complaint in the Florida Action to assert such a claim, but did not do so. Instead, almost one month after filing the instant motion, on February 23, 2007, Pontin sought leave to file the Supplement in the Florida Action, and, thus, to put a specific claim regarding the validity of the termination in a complaint filed in the Florida court. Subsequently, at oral argument on the instant motion, Pontin argued that, following Pontin's filing of the Supplement, there is an unavoidable risk of piecemeal litigation and inconsistent outcomes in these suits.

and Sea Tow.[7] Thus, a finding in one action as to the validity of the termination will have preclusive effect in the other action. Accordingly, the Court finds that the risk of inconsistent outcomes in these suits is preventable by principles of *res judicata* and/or collateral estoppel.

Finally, the Court notes that the fact that the state court made a preliminary ruling as to the validity of Sea Tow's attempted termination does not alter this Court's conclusion. As noted in the Court's previous decision, even assuming *arguendo* that the Notice of Termination issued by Sea Tow had no force or effect upon the date that the state court entered the Florida Injunction, Sea Tow could, at a minimum, still recover damages based on Pontin's conduct during the period following the termination of the Agreement in June 2006 and prior to the entry of the Florida Injunction.[8] *See Sea Tow Services Intern.*,

2007 U.S. Dist. LEXIS 3630, at *8. Therefore, the Court finds that allowing the instant suit to proceed does not present a risk of inconsistent outcomes or piecemeal litigation not preventable by principles of *res judicata* and/or collateral estoppel, and, thus, this factor weighs against abstention.

### 4. Order of Filing

The order of filing factor does not turn "exclusively on the sequence in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" *Village of Westfield*, 170 F.3d at 122 (quoting *Moses H. Cone*, 460 U.S. at 21); *see Gen. Star Int'l*, 2002 U.S. Dist. LEXIS 7980, at *32. Here, the Florida Action has not progressed substantially further than the instant action. According to the record before this Court, the Florida Action has been pending for nearly six years, some discovery has been conducted, and the state court has issued one substantive ruling as well as made several rulings on discovery motions. While the instant action has been pending for less than nine months and no discovery has been conducted, the parties have engaged in pre-answer motion practice, and the Court has made one substantive ruling. Moreover, as to the post-June 2006 conduct that is the subject

---

[7] As noted above, the Supplement filed in the Florida Action alleges claims relating to the validity of the termination in June 2006 *solely* against Sea Tow, and not against any of the other parties to the Florida Action. (*See* Supplement ¶¶ 33-40.)

[8] Defendants assert that this Court, in its previous decision in this case, "limited its review in this action to the period between the attempted termination [of the Agreement] and the entry of the Florida injunction." (Defs.' Reply at 9-10.) In fact, however, the Court did not make a ruling that it was so limiting its review of this case. Defendants' assertion is based on a portion of the Court's prior decision regarding the issue of whether Sea Tow had standing to bring the instant suit. In determining that Sea Tow had standing under Article III of the Constitution, the Court found that, assuming *arguendo* – but declining to so hold – that the Florida Injunction nullified the effect of the Notice of Termination, the injunction would not have resolved the entire dispute

between the parties. *See Sea Tow Services Intern.*, 2007 U.S. Dist. LEXIS 3630, at *8. The Court then proceeded to find that a live controversy existed between the parties, as to Sea Tow's contract claims, at the time of the alleged breach by Pontin of the post-termination provisions of the Agreement and, as to Sea Tow's trademark claims, as soon as Pontin allegedly used Sea Tow's marks and trade dress without permission to do so. *Id.* at *8-*9. The Court did not make a finding that its review of the case would be limited to any specific time period.

of this action, no discovery has taken place in either jurisdiction. Thus, the Court finds that this factor, at best, only mildly favors abstention. *See Village of Westfield*, 170 F.3d at 122 ("[W]here there has been limited progress in a state court suit, 'the fact that the state action was commenced before the federal suit carries little weight.'") (quoting *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 64 (2d Cir.1986)); *Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp.2d 369, 395 (same).

### 5. Rule of Decision

As the Second Circuit has observed:

Absent a res over which the state court has assumed jurisdiction, or a federal statutory expression of a preference to avoid piecemeal adjudication of what are essentially local rights as, for example, in *Colorado River* itself . . ., the fifth and sixth *Colorado River* factors take on heightened importance.

*Woodford*, 239 F.3d at 523.

Here, both the fifth and sixth factors weigh against abstention. As to the fifth factor, both state and federal law supply the rule of decision in the instant action. That is, although state contract law will figure importantly in this case, plaintiffs assert several claims under federal trademark law. Thus, because "[e]ven where there are some state-law issues, 'the presence of federal-law issues must always be a major consideration weighing against surrender [of federal jurisdiction],'" *Woodford*, 239 F.3d at 523 (quoting *Moses H. Cone*, 460 U.S. at 26), the Court finds that this factor strongly weighs against abstention. *See also Village of Westfield*, 170 F.3d at 124 ("[W]hen the

applicable substantive law is federal, abstention is disfavored. . . . [A]lthough the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex.") (internal quotation marks and citations omitted).

### 6. Protection of Federal Rights in State Proceeding

As to the sixth factor, "federal courts are to determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Village of Westfield*, 170 F.3d at 124 (quoting *Moses H. Cone*, 460 U.S. at 28). "If there is any substantial doubt" as to whether "complete and prompt" protection of federal rights is available in the state proceeding, abstention pursuant to *Colorado River* "would be a serious abuse of discretion." *Moses H. Cone*, 460 U.S. at 28; *see also Congress Talcott Corp.*, 1996 U.S. Dist. LEXIS 12827, at *20 ("[T]his factor 'is more important when it weighs in favor of federal jurisdiction,' that is, when it appears that plaintiff's rights would not be adequately protected in the state forum.") (quoting *Bethlehem Contracting Co. v. Lehrer/McGovern Inc.*, 800 F.2d 325, 328 (2d Cir. 1986). Here, Sea Tow could assert its federal claims as counterclaims in the Florida Action, and this Court finds no other basis to question the state court's ability to adequately protect Sea Tow's interests.[9] Therefore, the Court finds that this factor is neutral and, thus, weighs against abstention pursuant to

---

[9] The Court notes that state courts enjoy concurrent jurisdiction with the federal courts over trademark claims. *See, e.g., Ryan*, 107 F. Supp. 2d at 375 n.3.

*Colorado River*. *See, e.g., Estee Lauder*, 430 F. Supp. 2d at 169 ("[T]he ability of the [state] court to adequately protect [the non-movant's] interests renders the sixth factor largely neutral."); *Sulton*, 2002 WL 122919, at *4 ("The sixth factor is only significant if it militates in favor of federal litigation.") (quoting *Bethlehem Contracting Co.*, 800 F.2d at 328); *In re Asbestos Litig.*, 963 F.Supp. 247, 253 (S.D.N.Y.1997).

On balance, the factors discussed above weigh against the surrender of federal jurisdiction by staying this action in deference to the Florida Action. Each factor, save for the fourth factor, is either neutral, and thus weighs against abstention, or disfavors or strongly disfavors abstention under *Colorado River*. As for the fourth factor, it only mildly favors abstention and, in light of the otherwise overwhelming indications that abstention is inappropriate in the instant case, it does not, by itself, justify a stay in this case. Thus, having weighed the above factors, and being mindful of "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" this Court finds that there are no exceptional circumstances to warrant the surrender of this Court's jurisdiction. *See Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).

III. CONCLUSION

For the foregoing reasons, defendants' motion to stay the proceedings pursuant to the abstention doctrine enunciated in *Colorado River* is denied. The parties shall proceed with discovery forthwith, in accordance with the individual rules of Magistrate Judge E. Thomas Boyle.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 17, 2007
Central Islip, NY

\* \* \*

The attorney for plaintiff is Mitchell A. Stein, Esq., of Stein Law, P.C., 24 Woodbine Avenue, Suite 4, Northport, New York 11768. The attorneys for defendants are Michael S. Weinstein and Peter M. Jaensch, Esqs., of Robertson Freilich Bruno and Cohen, One Riverfront Plaza, Newark, New Jersey 07102.