UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SEA TOW INTERNATIONAL, INC.,

                        Plaintiff,            CV-06-3461 (SJF)(ETB)

    -against-                        **MEMORANDUM**
                                              **OPINION AND ORDER**

DUKE PONTIN, individually, and DUKE
PONTIN d/b/a/ SPIRIT TOWING d/b/a/
SEA TOW SERVICES FLORIDA KEYS,

                        Defendants.
----------------------------------------------------------------X

Before the court is the application of the defendants, Duke Pontin ("Pontin") and Duke Pontin d/b/a Spirit Towing d/b/a Sea Tow Services Florida Keys (collectively referred to as "Pontin" or "defendants"), to disqualify Mitchell Stein ("Stein"), counsel for plaintiff Sea Tow International, Inc. ("Sea Tow"), as well as his law firm, Stein Law, P.C. ("Stein Law"), from representing Sea Tow in the within litigation. For the following reasons, defendant's motion is denied.

## FACTS

This is an action for, <u>inter alia</u>, trademark infringement and breach of contract arising out of the termination by plaintiff of defendants' license to operate using plaintiff's "Sea Tow trademarks" and defendants' alleged failure to comply with certain contractual post-termination requirements of the licensing agreement entered into by plaintiff and defendants (the "Licensing Agreement"). (Compl. ¶ 1.) In their Amended Answer, defendants assert a counterclaim for breach of contract. A related proceeding is currently pending in Florida state court. <u>See</u> <u>Pontin</u>

v. Sea Tow Servs. Int'l, Inc., No. 44-2001-CA-111-K (Fla. Monroe County Ct.) (the "Florida Action").[1]

Defendants seek to disqualify Stein on the grounds that he is a central and necessary witness in this action. Defendants assert that Stein's testimony in the Florida Action demonstrates that Stein has personal knowledge of the issues at the heart of the within litigation, necessitating his testimony here. According to defendants, since Stein is a necessary witness, Disciplinary Rule 5-102 mandates his disqualification as counsel in this action. Alternatively, defendants seek Stein's disqualification under Disciplinary Rule 5-101 on the grounds that Stein has a conflict of interest that prevents him from being able to adequately represent Sea Tow in this action.

DISCUSSION

I. Legal Standard

"[T]he disqualification of an attorney upon the motion of an adversary is a serious sanction that ought not to be imposed lightly." Shabbir v. Pakistan Int'l Airlines, 443 F. Supp.

---

[1] In the Florida Action, which was initiated by Pontin in 2001, defendants allege causes of action for breach of contract, fraud, conspiracy to commit fraud, deceptive and unfair trade practices, tortious interference with contractual relations and breach of fiduciary duty, arising out of the same Licensing Agreement at issue herein. See Sea Tow Servs. Int'l, Inc. v. Pontin, 472 F. Supp. 2d 349, 356 (E.D.N.Y. 2007). Plaintiff's counsel, Mitchell Stein, was a named defendant in the Florida Action along with plaintiff herein. (Decl. of Mitchell A. Stein, dated June 18, 2007, ¶ 7.) On August 26, 2006, after the commencement of the within action, defendants herein sought and obtained a temporary injunction against plaintiff from the Florida court, which nullified the Notice of Termination of the Licensing Agreement issued by plaintiff to defendants on June 24, 2006. See Sea Tow, 472 F. Supp. 2d at 356. Also, plaintiff's counsel herein, Mitchell Stein, was dismissed as a party defendant therein. (Decl. of Thomas M. Bates, dated June 18, 2007, ¶ 6.) The court is advised that these issues are presently on appeal in the Florida state courts.

-2-

2d 299, 304 (E.D.N.Y. 2005). Indeed, it is well-established that "[m]otions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are 'often interposed for tactical reasons' and result in unnecessary delay." Bennett Silvershein Assoc. v. Furman, 776 F. Supp. 800, 802 (S.D.N.Y. 1991) (quoting United States Football League v. Nat'l Football League, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (collecting cases)). The Second Circuit has "been loathe to separate a client from his chosen attorney," Bohack Corp. v. Gulf & Western Indus., Inc., 607 F.2d 258, 263 (2d Cir. 1979), noting that "[t]he delay and additional expense created by substitution of counsel is a factor to which [it has] attached considerable significance . . . ." Id. (citing Lefrak v. Arabian Am. Oil Co., 527 F.2d 1136, 1138-40 (2d Cir. 1975)). Although any doubts are to be resolved in favor of disqualification, see Cheng v. GAF Corp., 631 F.2d 1052, 1059 (2d Cir. 1980), vacated on other grounds and remanded, 450 U.S. 903 (1981), the party seeking disqualification bears a "heavy burden" of demonstrating that disqualification is warranted. Evans v. Artek, 715 F.2d 788, 794 (2d Cir. 1983).

"The objective of the disqualification rule is to 'preserve the integrity of the adversary process.'" Evans, 715 F.2d at 791 (quoting Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). In deciding a motion to disqualify counsel, the court must "balance 'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" Hempstead Video, Inc. v. Inc. Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978)). Although courts typically look to the American Bar Association and state disciplinary rules when rendering decisions on disqualification motions, "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification."

Hempstead Video, 409 F.3d at 132 (citing Nyquist, 590 F.2d at 1246).

The decision to disqualify counsel is committed to the sound discretion of the district court. See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). Nonetheless, "[r]ecognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice," Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981), the Second Circuit has instructed that disqualification should only be imposed upon a finding that the presence of a particular attorney "poses a significant risk of trial taint." Id.; see also Bottaro v. Hatton Assoc., 680 F.2d 895, 896 (2d Cir. 1982) (citing Nyquist, 590 F.2d at 1246). "Where the threat of tainting the trial does not exist . . . the litigation should proceed, the remedy for unethical conduct lying in the disciplinary machinery of the state and federal bar." Bottaro, 680 F.2d at 896-97 (citing Armstrong v. McAlpin, 625 F.2d 433, 444 (2d Cir. 1980), vacated on other grounds and remanded, 449 U.S. 1106 (1981)).

II. Disqualification Under Disciplinary Rule 5-102

New York's Disciplinary Rule 5-102 ("DR 5-102") pertains to situations in which lawyers may be called as witnesses, commonly referred to as the "witness-advocate" or "advocate-witness" rule. Pursuant to subsection (a) of DR 5-102, the basis upon which defendants seek Stein's disqualification, "[a] lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant

issue on behalf of the client," except in certain enumerated circumstances.[2]  N.Y. Comp. Codes

R. & Regs. tit. 22, § 1200.21(a) (2007).  New York courts have interpreted DR 5-102(a) to

require disqualification "only when it is likely that the testimony to be given by the witness is

necessary."  S&S Hotel Ventures Ltd. P'Ship v. 777 S.H. Corp., 69 N.Y.2d 437, 445-46 (1987);

see also Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) ("Disqualification may be required

only when it is likely that the testimony to be given by [counsel] is necessary.") (quotation

omitted); Norman Reitman Co., Inc. v. IRB-Brasil Resseguros S.A., No. 01 Civ. 0265, 2001 WL

1132015, at *2 (S.D.N.Y. Sept. 25, 2001) ("In order to disqualify an attorney on the basis of the

advocate-witness rule, a party must demonstrate that the testimony is . . . necessary . . . .")

(citation omitted).  "Testimony may be relevant and even highly useful but still not strictly

necessary."  Forrest v. Par Pharm., Inc., 46 F. Supp. 2d 244, 248 (S.D.N.Y. 1999); S&S Hotel

Ventures, 69 N.Y.2d at 446 (same).

---

[2] The exceptions to DR 5-102(a), in which an attorney "may act as an advocate and also testify," are as follows:

> (1)  If the testimony will relate solely to an uncontested issue.
>
> (2)  If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>
> (3)  If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the lawyer's firm to the client.
>
> (4)  As to any matter, if disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as a counsel in the particular case.

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.21(a)(1)-(4).

To determine the necessity of counsel's testimony, courts take into account such factors as the significance of the matters to be attested to, the weight of the testimony to be given and the availability of other evidence. See Norman Reitman Co., 2001 WL 1132015, at *3; Forrest, 46 F. Supp. 2d at 248; S&S Hotel Ventures, 69 N.Y.2d at 446. The party seeking disqualification "bears a heavy burden," Conigliaro v. Horace Mann Sch., No. 95 Civ. 3555, 1997 WL 189058, at *3 (S.D.N.Y. Apr. 17, 1997) of establishing necessity, "which cannot be met with '[m]ere speculation.'" Id. (quoting Paretti v. Cavalier Label Co., 722 F. Supp. 985, 987 (S.D.N.Y. 1987)). Moreover, "if the facts to which the lawyer would testify could be elicited from another witness, or the lawyer's testimony would be cumulative of other evidence, disqualification may be inappropriate." Drywall Tapers and Pointers of Greater New York v. Local 530, No. 93-CV-154, 1996 WL 1088933, at *4 (E.D.N.Y. Oct. 24, 1996) (citing Purgess, 33 F.3d at 144). Finally, while "the advocate-witness disqualification rule[] . . . provide[s] guidance . . . for courts in determining whether a party's [counsel], at its adversary's instance, should be disqualified during litigation," S&S Hotel Ventures, 69 N.Y.2d at 440, it is "not binding authority." Id.

In the within action, defendants assert that Stein's testimony is necessary with respect to several subjects, including: (1) Sea Tow's "efforts to push out license holders who raise questions or concerns with [Sea Tow's] operations, fees and cost" (Def. Am. Mem. of Law in Supp. of Mot. to Disqualify ("Def. Mem."), 6); (2) the "viability of multiple defenses Defendants have submitted" (id.); (3) Sea Tow's "operations" (id., 7); (4) conversations Stein engaged in with Pontin (id., 8); (5) the Licensing Agreement and Pontin's alleged breach of it (id., 8-9); and (6) Sea Tow's "federal trademark protections." (Id., 9.) In support of their

motion, defendants offer the declaration of Duke Pontin wherein Mr. Pontin states that on "multiple occasions" over the past fifteen years, he has "spoken personally" with Stein and that such conversations have gone "well beyond simple legal advice . . . insofar as Stein provided [Pontin] with his personal knowledge, insight and perspective on various subject matters involving [Pontin's] business and Sea Tow . . . ." (Decl. of Duke Pontin ("Pontin Decl."), dated June 26, 2007, ¶ 4.) Pontin further states that "Stein possesses substantial personal knowledge about [Pontin's] business, including many of the very issues at the heart of the Florida and New York litigation." (Pontin Decl., ¶ 7.) Defendants also point to Stein's testimony in the Florida Action as indicative of his personal knowledge of the subjects about which they seek information.

Plaintiff asserts, however, that Stein has no personal knowledge of Sea Tow's business operations or the Licensing Agreement, and the alleged violation thereof, other than what he has learned in his capacity as counsel to Sea Tow, all of which is protected by attorney-client privilege. With respect to the Licensing Agreement, Stein maintains that he was not present during the negotiation of the Licensing Agreement, nor did he draft it, with the exception of one paragraph containing boiler-plate language. (Decl. of Mitchell A. Stein ("Stein Decl."), dated June 18, 2007, ¶¶ 2, 6; Decl. of Capt. Joseph J. Frohnhoefer II ("Frohnhoefer Decl."), dated June 17, 2007, ¶¶ 7-8.) Stein's testimony in the Florida Action supports this assertion. (Tr. of Proceedings in Pontin v. Sea Tow Servs. Int'l, Inc., No. 44-2007-CA-1111-K (Fla. Monroe County Ct.), dated Sept. 25, 2006, 84, 119 (hereinafter "Fl. Tr. II"), annexed as Ex. B to Certification of Michael S. Weinstein ("Weinstein Cert."), dated June 1, 2007.)

Where an attorney "negotiates, executes, and administers a contract, and is the key

witness at trial," it is clear that he should be disqualified from representation. Tiuman v. Canant, No. 92 Civ. 5813, 1994 U.S. Dist. LEXIS 6626, at *12 (S.D.N.Y. May 19, 1994) (citing Acme Analgesics, Ltd. v. Lemmon Co., 602 F. Supp. 306, 306-07 (S.D.N.Y. 1985). Similarly, where an attorney is the "sole representative for [a party] at numerous meetings and conversations negotiating the terms of [an agreement]" at issue in the litigation, disqualification is warranted. Multi-Juice, S.A. v. Snapple Beverage Corp., No. 02 Civ. 4635, 2003 WL 1961636, at *7 (S.D.N.Y. Apr. 25, 2003). However, where, as here, a lawyer plays no role in the negotiation or drafting of the contract at issue, and his testimony would "merely corroborate the testimony of others," he need not be disqualified under the witness-advocate rule. Tiuman, 1994 U.S. Dist. LEXIS 6626, at *12 (stating that "a lawyer who merely observed the negotiations and reviewed draft agreements need not be disqualified") (citation omitted); Am. Special Risk Ins. Co. v. Delta Am. Re Ins. Co., 634 F. Supp. 112, 122 (S.D.N.Y. 1986) (denying motion to disqualify counsel where defendants failed to show that plaintiff's counsel "were intimately involved in the negotiation and drafting of the [a]greements, although they may have been present at the negotiation sessions").

With respect to Stein's alleged personal knowledge of defendants, Stein explicitly testified in the Florida Action that he has no personal knowledge with respect to Pontin's business. (Tr. of Proceedings in Pontin v. Sea Tow Servs. Int'l, Inc., No. 44-2007-CA-1111-K (Fla. Monroe County Ct.), dated Sept. 20, 2006, 68 (hereinafter "Fl. Tr. I"), annexed as Ex. A to Weinstein Cert.) The only aspect of Stein's testimony in the Florida Action that could possibly be construed as reflecting personal knowledge with respect to Pontin's business concerns an email that Stein identified as a communication from the United States Coast Guard to Sea Tow's

Chief Executive Officer ("CEO"), Captain Joseph Frohnhoefer II ("Frohnhoefer"), in which the Coast Guard informed Sea Tow that Pontin's captain's license had expired. (Fl. Tr. I, 43-47.) Stein testified that he was present when the email was received and engaged in a subsequent conversation with the Coast Guard concerning the status of Pontin's captain's license. (Id., 47.) However, although this could loosely be construed as personal knowledge on Stein's part, it is personal knowledge concerning a matter that defendants could very easily obtain from Pontin himself or from representatives of the Coast Guard.

I find that defendants have not demonstrated a specific need to depose Stein. Although defendants repeatedly assert that Stein possesses specific personal knowledge as to various issues of this litigation, including how defendants allegedly violated the Licensing Agreement, defendants have not identified what that specific personal knowledge is. See Plotkin v. Interco Dev. Corp., 524 N.Y.S.2d 763, 765 (2d Dep't 1988) (denying motion for disqualification where movant "fail[ed] to explain precisely what testimony [of counsel] they require[d] [and] why they require[d] it"). Moreover, defendants have failed to establish that the testimony they seek to obtain is limited to matters exclusively within Stein's knowledge. Rather, all of the information defendants seek can be obtained from either Pontin himself or from representatives of Sea Tow. Accordingly, such testimony by Stein would merely be cumulative of other evidence. See Forrest, 46 F. Supp. 2d at 248 (denying motion to disqualify counsel where plaintiff was better suited than anyone to testify to information sought by defendant); Herr v. Union Local 306, 943 F. Supp. 292, 294-95 (S.D.N.Y. 1996) (denying motion to disqualify where, although plaintiff's counsel had personal knowledge of events at issue in the litigation, other witnesses possessed such knowledge as well, rendering plaintiff's counsel's testimony cumulative). Although

defendants may consider any testimony Stein could offer to be useful, based on the foregoing, it is not necessary. See Purgess, 33 F.3d at 144 (affirming district court's decision not to disqualify defendants' counsel on the grounds that "while defense counsel's testimony might have been useful, it was not necessary").

It should be noted that defendants attempt to make much of the fact that Stein testified in the Florida Action, arguing that the judge and even Sea Tow's own counsel in that action specifically noted that Stein was appearing as a witness on behalf of Sea and not as its attorney. (Def. Mem., 1-2.) However, a review of the transcript of Stein's testimony in the Florida Action demonstrates that defendants are misrepresenting certain statements that were made to better suit their position.

At the outset of the hearing that took place on September 20, 2006 in the Florida Action, counsel for Sea Tow in that action noted that Stein was providing testimony as "general counsel for Sea Tow" and that he was "making a qualified appearance" on behalf of Sea Tow. (Fl. Tr. I, 8-9.) Stein has represented Sea Tow since approximately 1984, serving as its general counsel. (Stein Decl., ¶ 6.) Although Stein was not appearing in the Florida Action as counsel for Sea Tow in that particular action, such that he was not taking testimony or offering any arguments or evidence on behalf of Sea Tow, it is clear that he was testifying in his capacity as counsel for Sea Tow and not as a purely factual witness. Moreover, although the judge handling the hearing in the Florida Action did admonish Stein at certain points to refrain from acting like a lawyer and instructed him to instead answer questions as a witness, (Fl. Tr. I, 32-33, 41-42; Fl. Tr. II, 90, 134), such statements do not support defendants' assertion that the judge "emphasized" that Stein's appearance in the Florida Action was that of "a witness with substantive knowledge of

the Florida allegations and defenses," thus stripping Stein of his position as Sea Tow's counsel altogether. (Def. Mem., 1.) In addition, the judge noted that Stein was also a party to that action at the time his testimony was being provided. (Id., 12.)

Moreover, the testimony that Stein provided in the Florida Action consisted of legal opinions, conclusions and interpretations of (1) the Licensing Agreement, (2) the alleged violations of the Licensing Agreement by Pontin, and (3) Sea Tow's legal obligations with respect to both Pontin's alleged contractual violations and the injunction entered by the Florida court nullifying Sea Tow's termination of the Licensing Agreement. On numerous occasions during his testimony, Stein merely read from the Licensing Agreement and other documents that were introduced into evidence and then offered his opinion or interpretation of the written portions he was asked to recite. In addition, Stein stated several times during his testimony that he could not "speak for Sea Tow," (Fl. Tr. II, 88), or "to what Sea Tow knew." (Id., 99.) Stein also asserted the attorney-client privilege in response to various questions, (Id., 97, 102, 156) and stated several times that a question was better directed to a corporate representative of Sea Tow because Stein did not possess the knowledge to answer the question. (Id., 106, 109.) In fact, Stein was only asked one question concerning his alleged "personal knowledge" of defendants and the issues involved in the Florida Action, to which Stein replied that he had gained any such knowledge from listening to a tape recording.[3] (Id., 113.) Based on the transcript of the Florida Action, I previously found, in connection with plaintiff's application to quash a subpoena issued

---

[3] At oral argument in connection with a separate motion by plaintiff to quash a subpoena directed to Stein by defendants, held on October 10, 2007, Stein asserted that he listened to this tape recording in his capacity as counsel for Sea Tow, which the record appears to support.

by defendants to Stein, that Stein's role in the within action, as well as the Florida Action, was that of counsel to Sea Tow and not a fact witness. See Sea Tow Int'l, Inc. v. Pontin, No. CV-06-3461, 2007 WL 3409416, at *5 (E.D.N.Y. Nov. 9, 2007). I make the same finding in connection with the instant motion.

Based on the foregoing, defendants' motion to disqualify Stein pursuant to DR 5-102 is denied.

III.   Disqualification Under Disciplinary Rule 5-101

As a second ground for their motion, defendants assert that Stein's "interests are potentially adverse to [Sea Tow's] interests in this litigation," (Def. Mem., 13), constituting a conflict of interest that warrants his disqualification under Disciplinary Rule 5-101 ("DR 5-101"). DR 5-101 states as follows:

> A lawyer shall not accept or continue employment if the exercise of professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests, unless a disinterested lawyer would believe that the representation of the client will not be adversely affected thereby and the client consents to the representation after full disclosure of the implications of the lawyer's interest.

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.20 (2007). The rationale for this rule is "to ensure the integrity and quality of the client's representation." Cadle Co. v. Damadeo, 256 F. Supp. 2d 155, 157 (E.D.N.Y. 2003).

In support of their argument, defendants assert that Stein "may modify or adjust his representation" of Sea Tow "to protect himself from revealing information regarding the adequacy of his advisory position as General Counsel" during the time that the Licensing

Agreement was entered into, which, according to defendants, "could be potentially unflattering" to Stein. (Id., 13-14.) Defendants go on to make various allegations concerning the level of representation provided to Sea Tow by Stein, which, in short, intimate that Stein has committed malpractice in some way. (Id., 14-16.) However, defendants are careful to couch their allegations in terms of possible scenarios that may arise as a result of certain evidence or testimony introduced at trial without specifying what that evidence is. Such conclusory assertions amount to nothing more than sheer speculation as to the existence of a conflict of interest. If anything, such assertions merely bolster the argument that this motion is being made solely to achieve a strategic advantage in this litigation. As such, they fail to provide a basis for Stein's disqualification. See Cadle, 256 F. Supp. 2d at 157 (denying motion for disqualification pursuant to DR 5-101 where movant provided only conclusory allegations of a conflict of interest); Olmoz v. Town of Fishkill, 684 N.Y.S.2d 611, 612 (2d Dep't 1999) (affirming trial court's denial of disqualification motion on the ground that "plaintiff failed to present anything more than sheer speculation as to the existence of a conflict of interest" and stating that plaintiff's "mere conclusory assertions that there is a conflict of interest are insufficient").

Defendants further assert that it is "unclear at present whether . . . Stein has any vested corporate financial interest in [Sea Tow] placing him in a different position than of a general counsel," which would also warrant his disqualification. (Id., 14.) However, the declaration of Sea Tow's CEO, Frohnhoefer, explicitly states that Stein "is not an officer, director or shareholder of Sea Tow." (Frohnhoefer Decl., ¶ 3.) Nor does Stein have any "pecuniary benefit" in Sea Tow or the within action. (Id.) Accordingly, Stein has no "personal stake" in the outcome of this litigation, (id.), and his disqualification is therefore not required.

Based on the foregoing, defendants' motion to disqualify Stein pursuant to DR 5-101 is also denied.

CONCLUSION

For the foregoing reasons, defendants' motion to disqualify plaintiff's counsel, Mitchell A. Stein, as well as his law firm, is denied.

SO ORDERED.

Dated: Central Islip, New York
November 19, 2007

/s/ E. Thomas Boyle
HON. E. THOMAS BOYLE
United States Magistrate Judge